United States District Court
Southern District of Texas
**ENTERED**
January 06, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JOSEPH JULIAN MARTINEZ | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:24-CV-124 |
| | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITY | § | |

**REPORT AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Joseph Julian Martinez ("Plaintiff") filed this action under 42 U.S.C. §§ 405(g), 1383(c)(3) on August 26, 2024, seeking judicial review of the denial of his application for Social Security Income benefits for lack of disability by the commissioner of the Social Security Administration ("the Commissioner"). (Dkt. No. 1 at 1). On February 28, 2025, Plaintiff filed his opening brief. (Dkt. No. 8). The Commissioner subsequently filed his response on March 28, 2025. (Dkt. No. 9). Plaintiff filed his reply on April 11, 2025. (Dkt. No. 10). After a review of the pleadings, briefs, administrative record, and the applicable law, the Court finds that the Commissioner's decision should be **REVERSED** and that the action be **REMANDED** for further proceedings.

## I.    BACKGROUND

Plaintiff originally filed an application for Supplemental Security Income ("SSI") on December 17, 2020. (Dkt. No. 4-10 at 2). In his application, Plaintiff alleged various mental impairments, including depression, panic disorders, bipolar, and post-traumatic stress disorder. (Dkt. No. 4-7 at 3). Plaintiff's application was subsequently

denied on November 18, 2021, and then again upon reconsideration on October 4, 2022. (Dkt. Nos. 4-2 at 36, 4-7 at 18–19, 31). Following those denials, Plaintiff filed a written request for a hearing. (Dkt. No. 4-8 at 19). On June 14, 2023, a hearing was held before an Administrative Law Judge ("the ALJ"). (Dkt. No. 4-6 at 54–99). Following that hearing, the ALJ issued a decision finding that Plaintiff is not disabled under section 1614(a)(3)(A) of the Social Security Act on September 25, 2023. (Dkt. No. 4-2 at 36–48).

In coming to that decision, the ALJ engaged in the Social Security Administration's well established five-step sequential evaluation. (*See id.*); 20 C.F.R. § 416.920(a). The five-step sequential evaluation required the ALJ to consider:

(i)     Whether the claimant is currently engaged in substantial gainful activity.

(ii)    Whether the claimant has a medically determinable physical or mental impairment or combination of impairments that are "severe."

(iii)   Whether the impairment or combination of impairments meets or equals a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(iv)    Whether the impairment prevents the claimant from performing past relevant work.

(v)     Whether the claimant's assigned Residual Functional Capacity ("RFC") prevents the claimant from engaging in any other work.

20 C.F.R. § 416.920(a)*; see also Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (summarizing the five-step disability analysis). The claimant bears the burden of proving his disability at the first four steps. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Should the claimant meet this burden, the burden shifts

to the Commissioner at the fifth step. *Id.*

Under the first step, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since December 17, 2020," the date of his original application. (Dkt. No. 4-2 at 38). Moving to the second step, the ALJ found that Plaintiff had various medically determinable impairments which "significantly limit [Plaintiff's] ability to perform basic work activities," and concluded that these impairments were severe.[1] (*Id.* at 39).

As for step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (*Id.*). In coming to her conclusion, the ALJ applied the "listings 3.00, 4.00, 8.04, 12.04, 12.06, 12.15, and SSR 19-2p." (*Id.*). The ALJ examined the "paragraph B" criteria contained in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00, "Mental Disorders," which involved using the "special technique" as provided by 20 C.F.R. § 416.920a(c). (*Id.*).[2] The paragraph B criteria are representations of "the areas of mental functioning a person uses in a work setting." (*Id.* at 39–40). These areas include the claimant's ability to 1) understand, remember, or apply information; 2) interact with others; 3) concentrate, persist, or maintain pace; and 4) adapt or

---

[1] These impairments include "morbid obesity, hypertension, Pickwickian syndrome, venous insufficiency with venous stasis, recurrent cellulitis of the lower extremities, depression, bipolar disorder, panic disorder, and posttraumatic stress disorder." (Dkt. No. 4-2 at 39). While other impairments were raised, the ALJ determined they were not severe after reviewing the record. (*Id.*); *see* 20 C.F.R. § 416.922.

[2] The ALJ also evaluated whether the "paragraph C" criteria are satisfied. However, the ALJ's assessment as to these criteria is not at issue. (Dkt. No. 4-2 at 40).

manage oneself. 20 C.F.R. § 416.920a(c)(2)-(4). The process of examining these areas is a "complex and highly individualized process," referred to as the "special technique." *Id.* § 416.920a(c)(1)-(3).

In using the special technique, the ALJ evaluates the claimant's medically determinable impairments found under step two and assigns a "degree of limitation" to each of the four functional areas. *Id.* § 416.920a(b)(2). A degree of limitation is a rating that acts as a representation of the claimant's ability to function "independently, appropriately, effectively, and on a sustained basis." *Id.* § 416.920a(c)(2). The rating system used is represented by a five-point scale ranging from none, mild, moderate, marked, and extreme. *Id*. If a functional area is assigned a degree of limitation rating of moderate or higher, the claimant's medically determinable mental impairment is deemed to be severe. *Id*. § 416.920a(d)(1)-(2). If the mental impairment is severe, the ALJ "determines if it meets or is equivalent in severity to a listed mental disorder" in paragraph B. *Id*. § 416.920a(d)(2*)*. A mental impairment will meet or equal a listed mental disorder only if the ALJ assigns a rating of at least: (1) extreme as to one functional area; or (2) marked as to two functional areas. *See* 20 C.F.R. Subpart P, App. 1, § 12.00. If the ALJ declines to make either of these assignments, the mental impairment "neither meets nor is equivalent in severity to any listing, [and the ALJ must then] assess[] [the claimant's] residual

4

functional capacity" under step 4 of the disability analysis. *Id.* § 416.920a(d).

Here, the ALJ considered the medically determinable impairments found under step two and the evidence associated with those findings to assign a rating of moderate to areas of:

1. Understanding, remembering, or applying information;

2. Interacting with others;

3. Concentrating, persisting, or maintaining pace; and

4. Adapting or managing oneself.

(*Id.* at 39–40). The ALJ concluded that because the Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation," the severity of Plaintiff's mental impairments did not meet or equal a listed mental disorder in paragraph B. (*Id.* at 40); *see* 20 C.F.R. Subpart P, App. 1, § 12.00. Accordingly, the ALJ was required to assign Plaintiff with an RFC and continue to step four of the disability analysis.

Under the fourth step of the disability analysis, the ALJ was required to determine whether the claimant's RFC prevents her from performing her past relevant work. 20 C.F.R. § 416.920(a)(v). A claimant's RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Irby v. Barnhart,* 180 F. Appx. 491, 493 (5th Cir. 2006) (unpublished); 20 C.F.R. § 416.920a(d)(3). In other words, a claimant's RFC

is a determination of what work the claimant can do despite their impairments. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x. 899, 902 (5th Cir. 2010) (unpublished). To determine a claimant's RFC, an ALJ must engage in a two-step analysis. SSR 16-3p.

Under the first step, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's alleged symptoms." SSR 16-3p; 20 C.F.R. § 416.929(b). In making this determination, the ALJ considers the entirety of the record which includes medical records and opinions, records and opinions of non-medical sources, and the testimony of the claimant themselves. SSR 16-3p. Should the ALJ conclude that a medically determinable impairment could reasonably be expected to produce an individual's alleged symptoms, the ALJ moves to the second step. *Id.* Under the second step of the analysis, the ALJ must evaluate the "intensity, persistence, and limiting effects of the individual's symptoms . . . and determine the extent to which an individual's symptoms limit" her ability to engage in work activities. *Id.* Like the ALJ's review under the first step, the ALJ considers "the entire case record, including objective medical evidence; the claimant's own statements; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*

Here, the ALJ found Plaintiff suffered from medically determinable impairments that could reasonably be expected to cause the symptoms he alleged under the first step. (Dkt. No. 4-2 at 42). Moving to the second step, the ALJ concluded

6

that Plaintiff's claims regarding intensity, persistence, and limiting effects of the medically determinable impairments were not entirely supported by the objective evidence. (*Id.*). As part of that decision, the ALJ discussed the medical opinions she found to be persuasive and unpersuasive as required by 20 C.F.R. § 404.1520c(b)(2) and § 416.920c(b)(2). (*Id.* at 42–46). As a result, the ALJ assigned the following RFC:

> [the claimant] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except can understand, remember, and carry out simple instructions and tasks; can use judgment to make simple work-related decisions; can interact frequently with supervisors, and occasionally with coworkers and the public.

The ALJ then used this RFC to determine which relevant work Plaintiff could perform despite his impairments. (*Id.* at 47). To accomplish this, the ALJ considered testimony provided by a vocational expert ("VE") at the disability hearing. (*Id.* at 47, Dkt. No. 4-6 at 95–98). After considering the VE's testimony and the rest of the record, to include the objective medical evidence, the ALJ found that Plaintiff is unable to perform any past relevant work. (Dkt. No. 4-2 at 47).

At the fifth step, the ALJ then determined whether Plaintiff's assigned RFC prevents him from engaging in any other work. (*Id.*). To do this, the ALJ considered Plaintiff's "age, education, work experience, and residual functional capacity," the Medical-Vocational Guidelines as provided in 20 C.F.R. Part 404, Subpart P, Appendix 2, and testimony provided by the VE at the disability hearing. (*Id.*). Finding that Plaintiff was able to perform other jobs that existed in significant numbers in the national economy in light of this evidence, the ALJ found that Plaintiff "has not

been under a disability, as defined in the Social Security Act, since December 17, 2020, the date the application was filed." (*Id.* at 48).

Plaintiff subsequently requested that the Social Security Administration's Appeals Council review the ALJ's decision on May 20, 2024, and August 21, 2024. (Dkt. No. 4-2 at 2, 9). On both occasions, the Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final determination of the Commissioner of the Social Security Administration. (*Id.* at 2, 9). On August 26, 2024, Plaintiff initiated this action challenging the determination, requesting that the Court find that Plaintiff is entitled to SSI benefits or remand the decision of the Social Security Administration for further proceedings. (Dkt. No. 1 at 1).

## II.    LEGAL STANDARDS

Under 42 U.S.C. § 405(g), judicial review of an ALJ's decision is limited to determining (1) whether the decision is supported by substantial evidence; and (2) whether the proper legal standards were utilized in coming to a decision. *Stevens v. Shalala*, 36 F.3d 90, 1994 WL 523807, at *1 (5th Cir. 1994) (unpublished); *see also Jones v. O'Malley*, 107 F.4th 589 (5th Cir. 2024). The substantial evidence standard of review requires the reviewing court to determine whether the ALJ's decision is supported by the administrative record. *Beck v. Barnhart,* 205 F. App'x. 207, 210 (5th Cir. 2006) (unpublished). In making this determination, a reviewing court "may not reweigh the evidence in the record, nor try the issue *de novo.*" *Bowling* v. *Shalala*, 26 F.3d 431, 434 (5th Cir. 1994). Rather, the reviewing court must determine whether the decision is supported by a "quantum of relevant evidence that a reasonable mind

might accept as adequate to support a conclusion." *Casey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *see Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (Stating the threshold to establish evidence sufficient to satisfy the standard is "not high"). While the standard is highly deferential, the Court must still "carefully scrutinize the record to determine if [sufficient] evidence is present." *Westover v. Astrue*, No. 4:11-CV-816-Y, 2012 WL 6553102, at *2 (N.D. Tex. Nov. 16, 2012) (citing *Harris v. Apfel* 209 F.3d 413, 417 (5th Cir. 2000)).

When an ALJ fails to follow proper legal standards in making his or her decision, on the other hand, a court will reverse the action and remand for further proceedings unless the court finds that the error is harmless. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). "Harmless error exists when 'it is inconceivable that the ALJ would have reached a different conclusion' absent the error. *Kilby v. Kijakazi*, No. 4:20-CV-3035, 2022 WL 1797043, at *5 (S.D. Tex. 2022) (quoting *Id*.). To establish that an error exists that warrants remand, "a plaintiff must show that the SSA's decision might have been different" had the ALJ followed proper legal standards. *Cardenas v. Kijakazi*, No. 7:21-CV-135, 2022 WL 2719044, at *6 (S.D. Tex. June 3, 2022), *R. & R. adopted,* 2022 WL 2715204 (S.D. Tex. July 12, 2022). Accordingly, "[m]istakes in the record will only be the basis for remand if such errors would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Todd C. v. Saul*, No. 4:19-CV-1811, 2021 WL 2651166, at *13 (S.D. Tex. June 28, 2021) (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

## III.    ANALYSIS

### A.    The Parties' Positions

In his brief, Plaintiff argues that the ALJ erred by formulating an RFC predicated on "an erroneous evaluation of Plaintiff's allegations." (Dkt. No. 8 at 12). Specifically, Plaintiff contends that while the ALJ recited the two-step procedure used to assign an RFC, that she failed to comply with it because she did not explain which of Plaintiff's symptoms were found consistent or inconsistent with the evidence in the record, and how her evaluation of Plaintiff's symptoms led to her conclusion. (*Id.* at 13). Plaintiff argues that the ALJ committed legal error by rejecting all of Plaintiff's allegations ("overall") due to the allegedly "benign" mental findings and Plaintiff's lack of consistent treatment. (*Id.*). In particular, Plaintiff argues that treatment records do not indicate that Plaintiff's mental health is "benign," and that the ALJ erred by mischaracterizing the evidence. (*Id.*). Additionally, Plaintiff argues that the ALJ cannot rely on lack of treatment or non-compliance as grounds for rejecting an alleged limitation without considering the reasons for it. (*Id.* at 15).

In response, Defendant argues that the ALJ "performed a proper analysis of Plaintiff's subjective symptom complaints and gave several valid reasons for discounting his subjective complaints." (Dkt. No. 9 at 6). Defendant argues the ALJ noted Plaintiff's mental health treatment was "sparse," and that the exams generally returned "relatively benign results." (*Id.*). Defendant noted Dr. Dipeolu's report and argued that the ALJ found the opinion in the report to be consistent with her RFC finding. (*Id.*). Defendant further argues Plaintiff's lack of treatment at Border Region,

his relatively normal findings at Cerebral Medical Group, and that Plaintiff ceased using medications in 2021. (*Id.* at 7-8).

Defendant further argues that the standard by which the ALJ's decision is "whether or not it is supported by substantial evidence," and that the ALJ "easily met that standard." (*Id.* at 9). Defendant argues the ALJ committed no error in considering Plaintiff's failure to follow medical advice and failure to seek out indigent care options. (*Id.* at 10-11).

Defendant argues that because Plaintiff has not made a showing that "no reasonable person could find support in the record for the RFC assessed by the ALJ," that the substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations weren't fully credible. (*Id.* at 12). Defendant argues the ALJ considered all the objective and subjective evidence of record and that the substantial evidence supports the RFC assessment. (*Id.*).

In his reply, Plaintiff argues that Defendant's response is premised on an "incomplete and misguided description of the standard of review" in this case. (Dkt. No. 10 at 1). Plaintiff reasserts that the present issue concerns whether the ALJ failed to comply with the governing legal standards in evaluating Plaintiff's allegations. (*Id.* at 2). Plaintiff argues that Defendant never properly addressed the issue of whether the ALJ performed a legally erroneous evaluation of Plaintiff's subjective allegations. (*Id.* at 2).

**B.     The ALJ's Consideration of Plaintiff's Statements About His Symptoms.**

In essence, Plaintiff argues the ALJ failed to comply with the proper legal standards in evaluating his subjective complaints of symptoms. (Dkt. No. 10 at 3). How an ALJ evaluates a claimant's subjective complaints of pain and other symptoms is governed by 20 C.F.R. §§ 404.1529, 416.929. SSR 16-3P details how the standards are applied.

In particular, Plaintiff argues that the ALJ erred in three ways: (1) by rejecting Plaintiff's allegations regarding his symptoms "overall," (2) by mischaracterizing the evidence regarding Plaintiff's mental health as benign; and (3) by incorrectly asserting that Plaintiff did not attempt to "establish care through programs for the indigent" and for failing to consider Plaintiff's mental impairments as a reason for Plaintiff's failure to comply with treatment. (Dkt. No. 8 at 13–15).

**1.     The ALJ Erred by Rejecting Plaintiff's Allegations "Overall."**

In his brief, Plaintiff argues that the ALJ predicated an RFC on a legally erroneous evaluation of Plaintiff's allegations. (Dkt. No. 8 at 12). Plaintiff contends the ALJ failed to comply with the two-step process used to evaluate a claimant's symptoms because she did not explain which of Plaintiff's symptoms were found consistent or inconsistent with the evidence in the record, and how her evaluation of Plaintiff's symptoms led to her conclusion. (*Id.* at 13). Plaintiff also asserts that "[t]he ALJ's conclusory assertions are . . . factually unsupported and legally inadequate to satisfy the requirement that she document 'clearly articulated' and 'specific reasons,' supported by the evidence, for rejecting each of Plaintiff's allegations under SSR 16-

3p." (Dkt. No. 8 at 16). On the other hand, Defendant contends that "the ALJ performed a proper analysis of Plaintiff's subjective complaints and gave several valid reasons for discounting his subjective complaints." (Dkt. No. 9 at 6). Thus, Defendant asserts the ALJ fully comported with the relevant guidelines. (*Id.*).

"The ALJ must consider a claimant's symptoms and the extent to which they are consistent with objective medical evidence and other evidence." *Chance v. Saul*, No. H-20-266, 2021 WL 1132226, at *7 (S.D. Tex. Feb. 12, 2021) (citing 20 C.F.R. § 416.929(a)). When considering a claimant's subjective complaints of symptoms, the ALJ uses a two-step process. First, the ALJ must consider whether Plaintiff has a medically determinable impairment that could reasonably be expected to produce an individual's alleged symptoms. SSR 16-3p. Once established, the ALJ then evaluates the "intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id.* In performing the second step, the ALJ examines the entire record, including "objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* Additionally, the ALJ considers the following factors:

1) Daily activities;

2) The location, duration, frequency, and intensity of pain or other symptoms;

3) Factors that precipitate and aggravate the symptoms;

4) The type, dosage, effectiveness, and side effects of any medication an

individual takes or has taken to alleviate pain or other symptoms;

5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms . . .; and

7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*

If Plaintiff's subjective symptoms are inconsistent with the record evidence, the ALJ may discount them. *Vernetta Lynn J. v. O'Malley*, No. 4:23-cv-4399, 2025 WL 1485865, at *7 (S.D. Tex. Jan. 8, 2025) (citing *Yeh v. Saul*, No. H-20-0562, 2021 WL 4895751, at *6 (S.D. Tex. June 21, 2021)). Pursuant to SSR 16-3p, an ALJ will "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in his . . . record and how [the ALJ's] evaluation of the individual's symptoms led to [the ALJ's] conclusions." SSR 16-3p. When an ALJ evaluates a claimant's symptoms, "it is not sufficient for [an ALJ] to make a single, conclusory statement" or "simply to recite the factors described in the regulations for evaluating symptoms." SSR 16-3p. The ALJ's "determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* Although the ALJ is required to "clearly articulate the specific reasons

14

for discounting the claimant's symptoms," she "need not discuss all evidence in support of the decision or follow formalistic rules in [her] articulation." *Vernetta*, 2025 WL 1485865, at *7 (citing *Yeh*, 2021 WL 4895751, at *7). The ALJ's evaluation "should include a narrative discussion of how the evidence supports each conclusion." *Yeh*, 2021 WL 4895751, at *7 (citing *Moynihan v. Saul*, No. 4:19-CV-1396, 2020 WL 5260783, at *5–6 (S.D. Tex. Aug. 6, 2020)).

First, the ALJ provided the appropriate two-step procedure used to evaluate Plaintiff's symptoms. (Dkt. No. 4-2 at 41). The ALJ noted that Plaintiff alleged disability due to depression, panic disorders, bipolar disorder, and PTSD and summarized Plaintiff's testimony as follows:

> He is unable to work full-time because of mobility problems and because of depression, panic attacks, and manic episodes. He has blisters at his legs, has sensitivity to water, and has weeping/drainage at his legs. He spends most of his time in recliners at home. He is only able to walk about 12 feet before he experiences pain and weakness, and he uses a cane to walk. He is only able to sit about 20 minutes before he needs to adjust positions and does not lift things. He does not wear long pants and is unable to wear regular shoes because of swelling and sensitivity at his legs and feet. He sleeps in his recliner. He gets Xanax from friends when his anxiety is bad. He last took it 3 weeks ago.

(Dkt. No. 4-2 at 41).

Although Plaintiff's medically determinable impairments were found to reasonably be expected to produce Plaintiff's alleged symptoms, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 42).

Plaintiff avers that "the ALJ's vague reference to the 'overall record' as

15

somehow inherently inconsistent with all of Plaintiff's allegations in general, fails to satisfy SSR 16-3p and is thus reversible legal error." (Dkt. No. 10 at 5). In support of his argument, Plaintiff cites *Leatherman v. Kijakazi.* (*Id.*). There, the ALJ discussed the claimant's complaints and summarized the medical records substantiating the claimant's ailments but failed to "expressly state the exact way she utilized any specific objective medical evidence to discredit [the claimant's] repeated and largely consistent complaints about chronic pain." *Leatherman v. Kijakazi*, No. 4:20-cv-04263, 2022 WL 509037, at *3 (S.D. Tex. Jan. 28, 2022), *R. & R. adopted*, 2022 WL 508325 (S.D. Tex. Feb, 18, 2022). The ALJ also did not "identify any specific pages of the medical record as the basis for her conclusion that [the claimant's] statements concerning pain were inconsistent with the medical record." *Id.* Accordingly, the court found that the ALJ committed error because the court did not have enough details to "understand exactly how the ALJ reconciled [the claimant's] complaints about pain with the objective medical evidence[,]" thus the court could not "assess the validity of the ALJ's reasoning." *Id.* (internal quotations omitted) (quoting *Schwartz v. Kijakazi*, No. 4:20-CV-00739, 2021 WL 3620071, at *3 (S.D. Tex. Aug. 16, 2021)).

Here, the Undersigned finds that the ALJ did not merely make a vague reference to the "overall record" to find Plaintiff's allegations inconsistent with the evidence. However, the Undersigned finds that the ALJ's evaluation does not provide enough detail to support how the ALJ reconciled Plaintiff's complaints with the objective medical evidence. *See Leatherman*, 2022 WL 509037, at *3.

For example, the ALJ states that the evidence "does not support [Plaintiff's]

statements of disabling symptoms associated with his physical impairments." (Dkt. No. 4-2 at 42). The ALJ then notes that the record shows that Plaintiff has a history of "recurrent cellulitis at his bilateral lower extremities, Pickwickian syndrome, venous insufficiency with venous stasis, hypertension, and . . . body mass index (BMI) of 59.4, [which places] him in the level III/morbid category of obesity[,]" which supports that he "experiences some work-related limitations because of his physical impairments." (*Id.*). However, the ALJ concludes that the evidence "does not support that despite treatment, his symptoms preclude him from all full-time work activity." (*Id.*). The ALJ goes on to assert that Plaintiff has been non-compliant with treatment. (*Id.*). In support of this assertion, the ALJ discusses Plaintiff's several visits to Doctors Hospital Laredo where he has either left against medical advice or failed to follow the provider's recommendation to establish care with a primary care provider at the Gateway Clinic within 5 to 7 days. (*Id.* at 42–44).

The ALJ also states that "[d]espite [Plaintiff's] non-compliance, physical examination findings do not indicate that his symptoms preclude him from all full-time work activity." (*Id.* at 42). The ALJ discusses Plaintiff's consultative physical examination with Dr. Octavio Guzman. (*Id.* at 42–43). There, Dr. Guzman noted Plaintiff's "gait was unsteady and swaying, that he had difficulty tandem walking, difficulty tip toe walking, and a broad-based stance." (*Id.* at 43). The ALJ also notes Plaintiff "retained 5/5 strength at his bilateral upper and lower extremities, and painless motion throughout." (*Id.*). Dr. Guzman also noted Plaintiff "was unable to squat, but was able to sit, stand, ambulate, and carry objects in a normal fashion

17

without assistive devices." (*Id.*). Thus, the ALJ found that Dr. Guzman's "assessment that [Plaintiff] did not have limitations in his ability to sit, stand, ambulate, and carry objects in a normal fashion, is not indicative of an individual who is unable to meet the physical demands of all full-time work activity." (*Id.*). In sum, the ALJ concluded that "[o]verall, the medical evidence of record summarized above simply does not support the claimant's statements of disabling symptoms because of his obesity and lower extremity problems related to recurrent cellulitis." (*Id.* at 44). Following her conclusion, the ALJ again reiterates the record's showing of Plaintiff's non-compliance with treatment and later states:

> Despite [Plaintiff's] non-compliance and significant lower extremity cellulitis, erythema, and edema with noted drainage at his lower extremities, physical examination findings consistently show that his cardiovascular and respiratory functioning was normal, that he was neurologically intact, that his strength remained 5/5 throughout, and that his range of motion was intact. Thus, the record supports that when compliant with treatment restricting the claimant to sedentary work sufficiently addresses any symptoms associated with his recurrent lower extremity cellulitis, venous insufficiency with venous stasis, hypertension, Pickwickian syndrome, and obesity.

(*Id.*).

Notably, the ALJ's discussion of Dr. Guzman's findings or her conclusion do not mention Plaintiff's testimony that he can only walk about 12 feet before experiencing pain or his testimony that he can only sit for about 20 minutes before needing to readjust. (Dkt. Nos. 4-2 at 41, 4-6 at 73, 75). At the hearing, Plaintiff testified to needing to readjust his position after sitting 20 minutes because his legs and knee will start to swell and "it'll rise the pain so much." (Dkt. No. 4-6 at 75). The ALJ's RFC determination limits Plaintiff to sedentary work. (Dkt. No. 4-2 at 41).

18

Sedentary work involves sitting, but "a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. §416.967(a). Reviewing the ALJ's analysis, it is unclear how the ALJ reconciled Plaintiff's statements that he can only walk a limited distance or sit for a limited time with the objective medical evidence in coming to her determination that Plaintiff has the capacity to perform sedentary work. *See Leatherman*, 2022 WL 509037, at *3 ("Absent more details, 'I cannot assess the validity of the ALJ's reasoning' because I genuinely don't understand exactly how the ALJ reconciled [the claimant's] complaints about pain with the objective medical evidence." (quoting *Schwartz*, 2021 WL 3620071, at *3)); *Pearce v. Saul*, No. SA-18-CA-1131-XR, 2020 WL 290017, at *15 (W.D. Tex. 2020) ("Although the ALJ did not specifically address why he was rejecting Plaintiff's testimony that he would need to alternately sit and stand, his analysis can be determined by his recounting of Plaintiff's activities, medical evaluations, and the fact that past treatment had proved relatively effective."). Thus, the Undersigned finds that the ALJ committed legal error.

### a.    Was the ALJ's Error Harmless?

An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Martinez v. Saul*, No. 3:19-CV-1904-B-BH, 2020 WL 5536814, at *17 (N.D. Tex. Aug. 31, 2020) (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. Nov. 28, 2006)), *R. & R. adopted*, 2020 WL 5531485 (N.D. Tex. Sept. 15, 2020). Here, it is unclear how and to what extent the ALJ considered Plaintiff's allegations regarding the limiting effects of his

impairments in light of the objective medical evidence. Thus, it is unclear whether the ALJ's determination would remain the same. Therefore, the Undersigned finds that the ALJ's error was not harmless, and remand is warranted. *See Leatherman*, 2022 WL 509037, at *4 ("Given the uncertainty surrounding the ALJ's reasoning, I conclude that it is conceivable that the ALJ could make a different administrative decision.").

### 2. The ALJ Did Not Err in Rejecting Plaintiff's Mental Allegations as Benign

Further, Plaintiff argues that the ALJ erred by rejecting Plaintiff's allegations based on her mischaracterization of Plaintiff's mental findings as "benign." (Dkt. No. 8 at 14). In response, Defendant asserts that the ALJ's decision is supported by substantial evidence and asserts that "Plaintiff 'cherry picked' the evidence by going through and citing medical evidence that he feels helps his arguments while leaving out normal findings." (Dkt. No. 9 at 9).

Specifically, Plaintiff argues that the ALJ mischaracterized his medical record as benign "without acknowledging the overwhelming evidence which demonstrates otherwise." (Dkt. No. 10 at 6). Plaintiff contends, that the "ALJ's mischaracterization does not constitute a valid basis for rejecting Plaintiff's allegations." (Dkt. No. 8 at 14). In support of his argument, Plaintiff cites *Oran R.B. v. Kijakazi*. (*Id.*). In *Oran*, the court used the "canon and rules of grammatical construction" to interpret the examining physician's mental RFC and found that the ALJ mischaracterized the mental RFC by inaccurately describing the examining physician's mental RFC finding. *Oran R. B. v. Kijakazi*, No. 3:20-cv-4309-BN, 2022 WL 3974264, at *5 (N.D.

Tex. Aug. 31, 2022). By forming the plaintiff's mental RFC based on the mischaracterized description of the physician's mental RFC finding, the court found the ALJ committed a prejudicial error. *Id.* Plaintiff also cites *Rodriguez v. Saul*. There, the court found that the ALJ's rejection of a medical opinion based on the ALJ's misstatement of the record was "legally indefensible." *Rodriguez v. Saul*, No. SA-20-CV-00817-ESC, 2021 WL 2210898, at *7 (W.D. Tex. June 1, 2021). However, the present case differs from the referenced cases as the ALJ did not misstate Plaintiff's medical records in finding them benign.

"The ALJ has the authority to weigh the medical evidence to determine Plaintiff's ability to work." *Gonzalez v. Dudek,* No. EP-24-CV-00071-MAT, 2025 WL 913471, at *6 (W.D. Tex. Mar. 25, 2025) (first citing *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001); and then *Adams v. Colvin*, 202 F. Supp. 3d 644, 649 (W.D. Tex. 2016)). Plaintiff argues that "the ALJ's assertion that mental health evidence contains generally 'benign' findings is belied by the record." (Dkt. No. 8 at 13). Plaintiff goes on to refer to a therapy record that assesses Plaintiff to be "in a crisis situation." (*Id.*). Plaintiff also refers to psychiatric treatment records that "document distracted attention span, poor attention and concentration, tangential or preoccupied though[t] process, excessive thought content, impaired judgment and insight, tangential and overabundant speech, rapid speech, broken eye contract, abnormal mood and affect, difficulty with abstract thinking, and limited delayed recall."[3] (*Id.* at 14). Plaintiff alleges these findings are not benign and are consistent

---

[3] Plaintiff alleges the record documents these symptoms, while some psychiatric records do

with Plaintiff's complaints of "rapid and overwhelming thoughts with an inability to calm his mind." (*Id.*). However, in her determination, the ALJ noted that "mental findings did show that [Plaintiff] had some problems with concentration and that he was quite talkative and tangential in thought."[4] (Dkt. No. 4-2 at 46). Taking those findings into account, the ALJ found it "reasonable to restrict [Plaintiff] to simple work with only frequent interaction with supervisors and occasional interaction with coworkers and the public." (*Id.*). Unlike the cases above, the ALJ did not mischaracterize the evidence by misstating the record. Although the ALJ considered Plaintiff's mental examinations findings to be "rather benign," she still noted the findings that showed Plaintiff's struggles with concentration and tangential thought and applied a limitation she saw fit. (Dkt. No. 4-2 at 44–46). Thus, the ALJ did not

---

include these symptoms as part of the provider's mental status examinations, other records simply document that Plaintiff reported experiencing those symptoms. (Dkt. Nos. 674–75, 676–79, 685–87); *see* 20 C.F.R. §404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled.").

[4] Considering Plaintiff's consultative psychological evaluation with Dr. Dipeolu, the ALJ noted her "assessment that [Plaintiff] has significant symptoms that interfere with his ability to maintain full-time work" and found it "not inconsistent with the finding that he is limited to simple work with additional social limitations." (Dkt. No. 4-2 at 45). Regarding Plaintiff's visit to Border Region MHMR in March 2021, the ALJ noted that the clinician "noted that [Plaintiff] appeared distracted and that his speech was rapid" but also noted Plaintiff "was calm and respectful, that he was oriented x4, that his thoughts were logical and coherent, and that his memory was intact." (*Id.*). Plaintiff received treatment through Cerebral Medical Group on two occasions. (*Id.*). The ALJ notes that on the first occasion, "[t]he examiner noted rather normal mental status examination findings." (*Id.*). Specifically, "[t]hey noted that [Plaintiff] was alert, and oriented, open, talkative, and pleasant" and he was "calm, cooperative, and that his behavior was appropriate." (*Id.*). Additionally, the examiner found Plaintiff's "thought process, memory, attention/concentration, judgment, and insight were normal/good." (*Id.*). The ALJ also acknowledged the examiner noted that Plaintiff had poor attention/concentration and judgment, but his "mental status examination findings were otherwise normal." (*Id.*). Last, the ALJ also discussed Plaintiff's consultative psychological evaluation with Dr. Simpson, where he found that "[Plaintiff's] mood was within normal range, his speech was clear, and he was oriented" and his "concentration, memory, and fund of knowledge were within normal limits." (*Id.*). The ALJ also noted that "Dr. Simpson assessed a provisional diagnosis of adjustment disorder, and assessed that [Plaintiff] appeared capable of personal, social, and occupations adjustments." (*Id.*).

err as she did not mischaracterize the evidence, but weighed the different findings.

### 3. The ALJ Erred in Denying Plaintiff's Allegations Overall due to Lack of Consistent Treatment Without Considering Plaintiff's Mental Impairments as a Possible Reason.

Last, Plaintiff argues the ALJ erred by rejecting Plaintiff's allegations due to his lack of consistent treatment. (Dkt. No. 8 at 13). Plaintiff contends that "[t]he ALJ's only articulated basis for rejecting [Plaintiff's allegations regarding his physical impairments] is that Plaintiff did not comply with the recommendation that he receive regular ongoing medical care to treat his physical impairments." (Dkt. No. 8 at 14–15). In essence, Plaintiff argues the ALJ erred by improperly asserting that there is no evidence that Plaintiff sought to establish care through indigent services and for failing to consider Plaintiff's mental impairments as a possible reason for Plaintiff's failure to comply with treatment. (*Id.* at 15).

An ALJ may find that the intensity and persistence of a claimant's alleged symptoms is inconsistent with the overall record evidence if the claimant "fails to follow prescribed treatment that might improve symptoms." SSR 16-3p; *see Busby v. Colvin*, No. H-15-2929, 2017 WL 818582, at *10 (S.D. Tex. Feb. 10, 2017) ("An ALJ may 'discount a claimant's subjective complaints based on his decision to not follow physicians' recommendations.'" (quoting *Lavery v. Astrue*, No. V-11-3, 2012 WL 3276711 (S.D. Tex. Aug. 8, 2012)), *R. & R. adopted*, 2017 WL 822123 (S.D. Tex. Feb. 28, 2017). However, in doing so, the ALJ must also consider possible reasons for Plaintiff's failure to comply with treatment or lack thereof. SSR 16-3p. The ALJ may consider factors such as the claimant's ability to afford treatment, ability to access

free or low-cost medical services, and the claimant's mental impairments. SSR 16-3p; *see Busby*, 2017 WL 818582, at *10. "The ALJ must review the record to determine if any possible explanations exist for the inconsistencies and explain how those reasons were considered." *Chance*, 2021 WL 1132226, at *8.

Plaintiff attributes his non-compliance with treatment due to his inability to afford treatment and his mental impairments that interfere with his ability to seek treatment. (Dkt. No. 8 at 15). Plaintiff argues that the ALJ erred by asserting there was "no evidence that Plaintiff attempted to establish care through programs for the indigent." (*Id.*) (internal quotations omitted). In finding that Plaintiff's allegations regarding the limiting effects of his physical symptoms are inconsistent with the record, the ALJ discussed Plaintiff's non-compliance with prescribed treatment, noting: "The claimant alleges that he does not have the means to establish ongoing outpatient care. However, there is no evidence in the file of attempts to establish care through indigent care programs or that he did not qualify for services through these programs." (Dkt. No. 4-2 at 44). In contrast, Plaintiff contends that he has attempted to seek "care through programs for the indigent." (Dkt. No. 8 at 15). In support, Plaintiff refers to treatment records showing that Plaintiff attempted to seek care through the county's indigent program. (Dkt. Nos. 8 at 15, 4-14 at 55, 56). Further, Plaintiff has testified that he attempted to go to the Wound Care Center but had trouble getting in. (Dkt. No. 8 at 15). Thus, the Undersigned finds that the ALJ erred by misstating the record in considering Plaintiff's inability to afford care when evaluating his non-compliance with treatment. *See Brunson v. Astrue*, 387 F. App'x

24

459, 461 (5th Cir. 2010) (per curiam) (finding the ALJ erred by misstating the record but determining the error to be harmless).

Further, Plaintiff contends that the "record is full of references to the significant manner in which Plaintiff's mental health interferes with his ability to comply with treatment." (Dkt. No. 8 at 15). As noted, it is the ALJ's burden to review the record for possible reasons for Plaintiff's failure to comply with prescribed treatment and "explain how those reasons were considered." *Chance*, 2021 WL 1132226, at *9. Evidence in the record supports Plaintiff's contention. At the hearing, Plaintiff testified that he cannot trust people even in hospital settings and feels unsafe. (Dkt. No. 4-6 at 91). Further, Plaintiff was questioned why he did not return to the Wound Care Center[5] after being given another appointment the next day after he was initially turned away due to provider overflow. (*Id.* at 65–66). In response, Plaintiff stated that "[i]f [he] didn't go back the next day, it would be due to the actual agoraphobia that does overwhelm [him], and it's something that [he] [does not] have control over." (*Id.* at 66). When discussing Plaintiff's subjective complaints, the ALJ addressed Plaintiff's visit to the Doctors Hospital in May 2022 and noted that Doctor Debra Chester, M.D., recommend inpatient treatment; however, Plaintiff refused the treatment and left against medical advice. (Dkt. No. 4-2 at 43). The ED Physician Record for this visit provides that Plaintiff refused to be admitted, explaining "that he has PTSD and he is not able to stay." (Dkt No. 4-13 at 129). The ALJ also refers to

---

[5] Although the ALJ questioned why Plaintiff did not return to the Wound Care Center after being turned away due to provider overflow, the record shows that Plaintiff was turned away from the Gateway Community Health Center. (Dkt. No. 4-14 at 42).

Plaintiff's return to Doctors Hospital in July 2022 and notes that Plaintiff reported he was referred to the wound clinic, but was afraid to go. (Dkt. No. 4-2 at 43). The ED Physician Record for that visit also noted that Plaintiff reported that he "has had this ongoing problem off and on since 2017 but does not leave his house because of PTSD." (Dkt. No. 4-13 at 176). Although not considered in the ALJ's decision, the record shows that Plaintiff's mental impairments as a reason for non-compliance has been acknowledged in the past as it was addressed in the Disability Determination Explanation for the claims at the "Recon level." (Dkt. No. 4-7 at 24 ("Records do show noncompliance but [Plaintiff] has a mental component that is not being treated and keeps him from receiving the treatment he needs.")). Thus, Plaintiff argues the ALJ erred by failing to consider Plaintiff's mental health as a reason for his non-compliance with treatment. (Dkt. Nos. 8 at 15, 10 at 6). Defendant fails to address Plaintiff's argument in its response. (*See* Dkt. No. 9 at 11). As the ALJ failed to consider Plaintiff's mental health as a possible reason for his failure to comply with treatment, the Undersigned finds the ALJ erred.

### a.    Was the ALJ's Error Harmless?

Finding that the ALJ has erred, the Undersigned must now determine whether her error was harmless. Plaintiff argues that the ALJ committed harmful error due to the improper evaluation of Plaintiff's allegations, which he asserts are consistent with objective medical evidence. (Dkt. No. 8 at 16). An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Martinez v. Saul*, No. 3:19-CV-1904-B-BH, 2020 WL 5536814, at

*17 (N.D. Tex. Aug. 31, 2020) (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. Nov. 28, 2006)), *R. & R. adopted*, 2020 WL 5531485 (N.D. Tex. Sept. 15, 2020).

### i. The ALJ's Misstatement of Fact Regarding Plaintiff's Attempts to Establish Care Through Indigent Programs Was Harmless Error.

Although the ALJ erred by misstating the record, the error is harmless. A condition becomes disabling in law if "the claimant cannot afford the prescribed treatment or medicine[] and can find no way to obtain it." *Lovelace v. Brown*, 813 F.2d 55, 59 (5th Cir. 1987) (citation omitted). However, "an inability to afford treatment by itself is insufficient to establish disability; a claimant must also show that he could not obtain medical treatment from other sources, such as free or low-cost health clinics." *V. v. Commissioner of Social Security*, No. 4:21-cv-1797, 2022 WL 4450488, at *6 (S.D. Tex. Sept. 23, 2022) (citations omitted). As Plaintiff noted, the record shows that Plaintiff has attempted to access free or low-cost health care. (Dkt. Nos. 8 at 15, 4-14 at 55, 56). Plaintiff testified that although he had been given a prescription to go to the Wound Care Center, he failed to go due to difficulty "getting ahold of somebody at the Wound Care Clinic." (Dkt. No. 4-6 at 65). Additionally, Plaintiff contends he "had a hard time getting in because the Center requires him to coordinate with the County to try and get a voucher from Indigent Servi[c]es, and those services only cover 'limited portions of' the bill." (Dkt. Nos. 8 at 15, 4-6 at 65). Although the record contains an email from Plaintiff alleging he does not qualify for indigent services, this assertion is unsupported by the record. (Dkt. Nos. 4-11 at 51 ("Webb

County Indigent Services . . . didn't qualify . . . ."), 4-14 at 55, 56 (providing the indigent program information as the payor for Plaintiff's April 22, 2023, visit to Laredo Medical Center)). Thus, it appears that Plaintiff has the ability to seek free or low-cost health care but has not made use of these resources due to the difficulty in scheduling an appointment and his mental health, which prevents him from following up with care. Accordingly, the Undesigned finds that it is inconceivable that a different administrative conclusion would have been reached if the ALJ were to have properly stated the record regarding Plaintiff's inability to afford care.

### ii. The ALJ's Failure to Consider Plaintiff's Mental Impairments as a Reason for Failing to Comply With Prescribed Treatment Was Not Harmless Error.

Here, the ALJ failed to consider Plaintiff's mental impairments as a possible reason for his failure to comply with recommended treatment. As such, the ALJ did not comply with her requirement to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "explain how [she] considered the individual's reasons in [her] evaluation of the individual's symptoms." SSR 16-3p. Again, an error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Martinez*, 2020 WL 5536814, at *17.

Here, the ALJ failed to consider Plaintiff's mental impairments as a reason for his non-compliance, thus, there is no explanation how that reason was considered in determining the limiting effects of Plaintiff's symptoms. Note, the ALJ found that "the record supports that *when* compliant with treatment[,] restricting [Plaintiff] to

sedentary work sufficiently addresses any symptoms associated with his recurrent lower extremity cellulitis, venous insufficiency with venous stasis, hypertension, Pickwickian syndrome, and obesity." (Dkt. No. 4-2 at 9) (emphasis added). As the ALJ failed to explain how Plaintiff's mental health impairments were considered with Plaintiff's non-compliance, it is unclear whether the ALJ's determination would remain the same. Considering the ALJ's findings regarding the limiting effects of Plaintiff's physical impairments largely rely on his non-compliance with treatment, it is conceivable that a different administrative conclusion could have been reached had Plaintiff's mental health been considered as a reason for Plaintiff's non-compliance.

## IV.    RECOMMENDATION

For the reasons set forth above, the Undersigned **RECOMMENDS** this case be **REVERSED** and **REMANDED** for further proceedings.

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within

**FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

      **SIGNED** on the 5th day of January, 2026.

Christopher dos Santos
United States Magistrate Judge